DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Rayshawn Robinson, appeals from the judgment of the Summit County Court of Common Pleas, Juvenile Division, which adjudicated Mr. Robinson a delinquent child by reason of one count of kidnapping and four counts of rape. We affirm.
 I. {¶ 2} On March 12, 2002, Mr. Robinson was charged with being a delinquent child as defined in R.C. 2152.02, by reason of one count of kidnapping, in violation of R.C. 2905.01(A)(4), a first degree felony if committed by an adult; and by reason of one count of rape, in violation of R.C. 2907.02(A)(1)(c), a first degree felony if committed by an adult. On March 14, 2002, Mr. Robinson was charged with being a delinquent child by reason of one additional count of rape, in violation of R.C. 2907.02(A)(1)(c), a felony in the first degree if committed by an adult. On May 15, 2002, the State filed an amended complaint which included additional facts. On May 16, 2002, Mr. Robinson was charged with being a delinquent child by reason of two additional counts of rape, in violation of R.C. 2907.02(A)(2), a first degree felony if committed by an adult.
 {¶ 3} On October 4, 2002, the trial court issued a judgment entry and order of adjudication, finding, inter alia, that Mr. Robinson is a juvenile subject to the jurisdiction of the court, and ordering that Mr. Robinson is adjudicated a delinquent child on the basis of one count of kidnapping in violation of R.C. 2905.01(A)(4), two counts of rape in violation of R.C. 2907(A)(1)(c), and two counts of rape in violation of R.C. 2907.02(A)(2). The trial court scheduled a dispositional hearing since Mr. Robinson had previously submitted to a sexual offender assessment. On October 15, 2002, the trial court issued a judgment entry and order of disposition, which ordered that Mr. Robinson be committed to the custody of the Ohio Department of Youth Services. It is from the decision of the juvenile court that Mr. Robinson now appeals.
 {¶ 4} Mr. Robinson timely appealed, asserting two assignments of error.
 II. First Assignment of Error
"The Trial Court Erred In Finding That The Victim's Ability To Resist Or Consent Was Substantially Impaired Because Of Her Mental Or Physical Condition And That The Juvenile Knew Or Should Have Had Reasonable Cause To Believe That The Victim's Ability To Resist Or Consent Was Substantially Impaired."
 {¶ 5} In his first assignment of error, Mr. Robinson avers that the trial court erred when it determined that (1) the victim's ability to resist or consent was substantially impaired by her mental or physical condition, and that (2) Mr. Robinson knew or should have had reasonable cause to believe that the victim's ability to resist or consent was substantially impaired. In support of these assertions, Mr. Robinson argues that the State failed to prove, beyond a reasonable doubt, that the victim's ability to resist or consent to the sexual conduct in question was substantially impaired. We disagree.
 {¶ 6} The Court notes, as a preliminary matter, that we construe Mr. Robinson's first assignment of error as disputing the sufficiency of the evidence with respect to both the victim's ability to resist or consent to the sexual conduct as well as whether Mr. Robinson knew or should have had reasonable cause to believe that the victim lacked the ability to resist or consent.
 {¶ 7} The sufficient evidence standard requires an appellate court to "view the evidence in the light most favorable to the prosecution, and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Leggett (Oct. 29, 1997), 9th Dist. No. 18303. We must determine, as a matter of law, whether the evidence was legally sufficient to support a conviction. Id. "In essence, sufficiency is a test of adequacy." State v. Thompkins
(1997), 78 Ohio St.3d 380, 386.
 {¶ 8} In the present case, Mr. Robinson was adjudicated a delinquent child by reason of two counts of rape, in violation of R.C. 2907.02(A)(1)(c). That subsection states, in pertinent part,
"(A)(1) No person shall engage in sexual conduct *** when any of the following applies:
"* * *
"(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition[.]"
 {¶ 9} Because the Revised Code does not define the phrase "substantially impaired," the Supreme Court of Ohio has interpreted the phrase to mean "a present reduction, diminution, or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct. This is distinguishable from a general deficit in ability to cope, which condition might be inferred from or evidenced by a general intelligence or I.Q. report." (Emphasis added.) State v. Zeh
(1987), 31 Ohio St.3d 99, 103-104.
 {¶ 10} Substantial impairment does not have to be proven by expert medical testimony; rather, it can be shown to exist by the testimony of people who have interacted with the victim, and by allowing the trier of fact to do its own assessment of the person's ability to appraise or control his or her own conduct. State v. Hillock, 7th Dist. No. 02-538-CA, 2002-Ohio-6897, at ¶ 21, citing State v. Tate (Oct. 26, 2000), 8th Dist. No. 77462. Applying the law to the facts of the instant case, we now discuss the evidence produced at trial pertaining to the issues of the victim's substantial impairment and Mr. Robinson's knowledge of this impairment, in that order.
 A. {¶ 11} Debra Nicholas, the victim's mother, testified on behalf of the State as follows: Ms. Nicholas testified that the victim is "developmentally handicapped," and that the victim is "slower than most kids her age[;] [i]t takes her longer to learn things. * * * She needs a lot of attention." Ms. Nicholas stated that the victim began having developmental problems right after birth; and that after being tested, the victim was enrolled in the United Cerebral Palsy School for the Handicapped of Akron ("UCPSH") by the age of 22 months. At UCPSH, the victim received therapy, including occupational, physical, and speech therapy. Ms. Nicholas stated that the victim attended this school until she began kindergarten. In the first grade, the victim began taking special education classes in the city of Barberton. Ms. Nicholas also noted that the victim has been diagnosed with ADHD, and that she needs a lot of attention. At the time that the incident occurred on February 24, 2002, the victim attended UL Light Junior High School in Barberton, Ohio, where she took all special education classes with the exception of one regular class which provided her with some leniency. Ms. Nicholas stated that, at the time of the trial, the victim was 15 years old and attended Barberton High School where she received special help. Specifically, the victim took a number of special education classes, and was allowed leniency with respect to the work in the regular classes.
 {¶ 12} The following discourse on direct examination of Ms. Nicholas presents a description of the victim's physical and mental condition:
"Q: Can you describe how [the victim] talks?
"A: She talks slower. You know, a lot of people have a hard time understanding her at times.
"Q: Could you describe how she looks?
"A: If you look at her close[ly], you can tell that she's slower than other kids * * *.
"* * *
"Q: * * * Can she feed herself?
"A: She can feed herself. You have to kind of tell her sometimes that — she has no muscles, her muscles don't work properly on her face, so when she eats, she might have something on her mouth and you have to say, `* * * wipe your mouth,' because she can't feel that it's there.
"* * *
"Q: Does she smile a lot?
"A: A lot of times, you know, it will appear that she's smiling and she's not. It's just [that] she can't feel that, any of that.
"Q: So she has no control over her facial muscles?
"A: Right.
"Q: You testified you have a nine year old daughter ***. Does [she] have any special instructions from you in regards to [the victim]?
"A: If I allow them to go on a walk or something like that, I'll say, * * * [`]watch your sister, make sure she gets across the street,['] because [the victim] do[es]n't — a lot of times she do[es]n't — she knows to watch for cars, but she will get to that point and go to cross and she — — * * * won't look[.]"
 {¶ 13} This Court notes that the victim was placed on the stand to testify during the trial. Thus, the juvenile court had an opportunity to personally observe the victim and assess the actual mental and physical condition of the victim. A trial court's conclusion which is based on personal observations cannot be gainsaid on appeal. State v. Zeh (Apr. 23, 1986), 1st Dist. No. C-850303. "[I]n a review of the sufficiency of the evidence, the [appellate] court does not engage in a determination of the witnesses' credibility." State v. Goff (1998), 82 Ohio St.3d 123,139, citing State v. DeHass, (1967), 10 Ohio St.2d 230, paragraph one of the syllabus; see, also, State v. Miller, 9th Dist. No. 02CA0034,2002-Ohio-7001, at ¶ 20 (stating that an appellate court must give deference to the trier of fact's judgment with respect to a witness' credibility).
 {¶ 14} Although the defense questioned Ms. Nicholas with respect to the victim's skills in using the computer at home, and suggested that this evidence shows that the victim may not be substantially impaired, we find this testimony not to be particularly probative on the issue of whether, at the time of the rape incident, the victim had the ability to appraise the nature of the sexual conduct that occurred. Moreover, even if this evidence was relevant to the issue of the victim's impairment at the time of the incident, we will not overturn the juvenile court's judgment simply because the court chose to believe the State's testimony rather than that of the defense. When inconsistencies exist in the testimony, it is the trier of fact's responsibility to weigh the evidence and assess the witnesses' credibility. State v. Jones, 9th Dist. No. 21448,2003-Ohio-4518, at ¶ 20, citing DeHass, 10 Ohio St.2d at paragraph one of the syllabus.
 {¶ 15} In light of the foregoing, we conclude that sufficient evidence was presented to support a finding that at the time of the rape incident, the victim had a reduction in her ability to appraise the nature of her conduct or to control her conduct. Zeh,31 Ohio St.3d at 103-104. Therefore, we find that there was sufficient evidence to support the conclusion that the victim was substantially impaired at the time of the rape incident. R.C. 2907(A)(1)(c). Consequently, we find that the juvenile court did not err when it found that the victim was substantially impaired.
 B. {¶ 16} We now discuss the evidence presented at trial that speaks to the issue of whether Mr. Robinson had knowledge of, or had reasonable cause to believe, that the victim was substantially impaired. Deonte Griffin testified on behalf of the State. At the time of the trial, Mr. Griffin was in detention for the same incident involving the victim. Mr. Griffin testified that, on February 24, 2002, he and Mr. Robinson walked past the victim and her younger sister on Dietz Avenue in Akron, Ohio. Mr. Griffin testified that Mr. Robinson approached the girls and spoke with them, while Mr. Griffin remained "about five feet away[.]" He further testified that he then approached the girls, and that the victim told him that she was in SBH classes in school, which he understood to stand for "student behavior handicapped[.]" He further testified that her speech was not normal, and that she would slur her words when speaking to him. Mr. Griffin testified that when they started to walk, he noticed that the victim was "walking real slow[ly]."
 {¶ 17} On March 1, 2002, Mr. Robinson was interviewed by the Akron Police, and the recording of the interview was admitted into evidence at trial. The taped interview reveals that Mr. Robinson knew and had reasonable cause to believe that the victim was developmentally handicapped. Particularly, Mr. Robinson stated that he could tell immediately after seeing the victim that she was, in his words, "retarded." Furthermore, Mr. Griffin's testimony indicates that he and Mr. Robinson spoke to the girls together. Therefore, it is reasonable to infer that Mr. Robinson had an opportunity to observe the attributes and statements of the victim that Mr. Griffin testified about. Based on the interview with Mr. Robinson and the testimony of Mr. Griffin, we conclude that Mr. Robinson had, at the time of the rape incident, knowledge of the fact that the victim was substantially impaired, and that he had reasonable cause to believe that the victim was substantially impaired.
 {¶ 18} Accordingly, Mr. Robinson's first assignment of error is overruled.
 III. Second Assignment of Error
"The Trial Court's Findings That There Was Sufficient Credible Evidence To Prove Beyond A Reasonable Doubt That The Juvenile Used Force To Engage In Sexual Conduct With The Victim Are Against The Manifest Weight Of The Evidence."
 {¶ 19} In his second assignment of error, Mr. Robinson contends that the trial court's finding that there was sufficient credible evidence to support the court's judgment that Mr. Robinson used force to engage in sexual conduct is against the manifest weight of the evidence. Mr. Robinson avers that the trial court's conclusion that he used force to engage in sexual conduct with the victim was not proven beyond a reasonable doubt by the State and was against the manifest weight of the evidence. We disagree.
 {¶ 20} We construe Mr. Robinson's second assignment or error to challenge both the sufficiency of the evidence and the manifest weight of the evidence with respect to the issue of whether Mr. Robinson used force to engage in sexual conduct. As an initial matter, this Court observes that sufficiency of the evidence and weight of the evidence are legally distinctive issues. Thompkins, 78 Ohio St.3d at 386. The standard of review for sufficiency of the evidence is discussed in the first assignment of error.
 {¶ 21} "While the test for sufficiency requires a determination of whether the [S]tate has met its burden of production at trial, a manifest weight challenge questions whether the [S]tate has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citingThompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 22} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 23} Sufficiency of the evidence is required to take a case to the jury; therefore, a finding that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency.State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462. "Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) Id.
 {¶ 24} In the present case, Mr. Robinson was adjudicated a delinquent child by reason of one count of kidnapping in violation of R.C. 2905.01(A)(4), two counts of rape in violation of R.C.2907.02(A)(1)(c), and two counts of rape in violation of R.C. 2907.02(A)(2). The statute regarding kidnapping provides that
"(A) No person, by force, threat, or deception, or in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
"* * *
"(4) To engage in sexual activity *** with the victim against the victim's will[.]" (Emphasis added.) R.C. 2905.01(A)(4).
 {¶ 25} The pertinent portion of the rape statute pertaining to force provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit toforce or threat of force." (Emphasis added.) R.C. 2907.02(A)(2). The Revised Code defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C.2901.01(A)(1). Applying the law to the facts of the instance case, we now discuss the evidence presented at trial.
 {¶ 26} The victim testified at trial. She testified that on February 24, 2002, she was walking around the block from her house with some friends and her younger sister, when they ran into Mr. Robinson and Mr. Griffin. She testified that the two boys asked her for her phone number and to walk around the block with them, and that she agreed to do so. She testified that as they walked, "they grabbed [her] hands behind [her] back." (Emphasis added.) On redirect examination, the victim elaborated, stating that "[t]hey had my hands both with their hands. * * * * Each of them took my hand." Also on redirect, the victim testified that as they walked, one boy was on one side of her and the other on the other side of her; and that if she wanted to go somewhere else at that time that she could not have done so. The victim also testified that they ended up walking in a direction different from where the boys had said that they would walk; they ended up going to a garage.
 {¶ 27} The victim then testified that the boys pushed her into the backseat of a car parked in this garage, and that one boy got into the backseat with her, and the other boy got into the front seat. She testified that both boys were in the car with her the entire time, and that both of the boys did things to her. She stated that the boy in the backseat then pushed her into the front seat, and that one boy then pushed her head down and made her perform oral sex on him. She testified that one of the boys had unbuttoned and pulled down her pants. She maintained that one boy stuck his penis "[w]herever he could get it in" and in "the back of [her] butt" and also attempted to have her perform oral sex on him. The victim testified that she did tell the boys to stop, and that Mr. Griffin had told Mr. Robinson to stop and let her go, but that Mr. Robinson did not stop and "just kept on going." She stated that at some point she was able to "kick `em off, and [that she] finally got out of the car and started running."
 {¶ 28} Mr. Griffin testified regarding the incident as follows: He stated that after Mr. Robinson had spoken with the victim on Dietz Avenue, that Mr. Robinson told him that she had agreed to "run a train" with them, which Mr. Griffin defined as one person having sex with two other people. He also asserted that Mr. Robinson and the victim walked together ahead of him while he followed them. Mr. Griffin further stated that Mr. Robinson led them to a garage behind a house where each of them got into the car. He stated that the victim wanted to do the sexual activities with the boys. On cross examination, he asserted that neither he nor Mr. Robinson grabbed the victim's hand or forced her to go with them. Mr. Griffin maintained that the victim had agreed to do everything in the car, and that he and Mr. Robinson did not force the victim to do anything in the car. He also stated that during the incident the victim did not specifically say "no" to the conduct. He did admit, however, that she never explicitly agreed to engage in the specific sexual conduct that occurred. Mr. Griffin further stated that he had to pull Mr. Robinson off of the victim, and that "she was pushing him up too."
 {¶ 29} Dr. Richard Steiner, an emergency physician and medical director of the Care Center at Akron Children's Hospital, testified on behalf of the State as well. During direct examination, Dr. Steiner explained that the Care Center is a clinic that deals with the evaluation of children who have alleged being abused or neglected. Dr. Steiner also stated that he has been qualified as an expert in the Summit County Common Pleas Court and as well as the juvenile division of that court, in the areas of pediatrics and pediatric physical and sexual abuse. He also testified that from the time that he began his directorship at the Care Center in 1991 to the time at trial, he has examined on average 800 children each year. Dr. Steiner testified that on February 24, 2002, the victim presented herself to the Care Center, and that he performed a medical evaluation of her which led to the following observations:
"[I]n my physical evaluation, I found that indeed there were injuries that indicated that there was penetrating trauma to the vaginal area, injuries to what is termed the posterior fourchette, the fossa navicularis, as well as the hymen, so indeed, there was forced penetrating injury to her genital — to her vagina."
 {¶ 30} Dr. Steiner also stated that the victim had bleeding of the genitals. He asserted that the "wounds were actively bleeding and [that] there were signs of old blood, clotted, crusted blood on her skin." He further stated that the victim had reported to him that she had experienced pain during the penetration, which he said was consistent with the injuries that he saw. On cross examination, Dr. Steiner explained that "trauma" is a medical term which means an "event that causes the force that causes the injury" to the patient's body. He further testified that "to cause injury, [the penis] would have to * * * generate a force sufficient to tear the tissues of the genital track." Dr. Steiner also testified that at the conclusion of the medical evaluation, his "impression was that [the victim] indeed was the victim of sexual assault, based on the history that was given to [him] and the physical findings that [he] saw." Dr. Steiner also testified as to the victim's demeanor during the interview and medical evaluation. He stated that the victim was cooperative yet angry, which he asserted was consistent with a victim of rape.
 {¶ 31} On direct examination, Ms. Nicholas had testified that on the day that the incident occurred, her younger daughter and the victim had gone out to play with neighborhood children. She stated that the younger daughter ran back in the house, screaming that something was "not right." Ms. Nicholas stated that she and her younger daughter, husband, and a friend searched the neighborhood for the victim; and that when she returned to the house, she found the victim waiting for them there. Ms. Nicholas testified that at that time the victim "was hysterical[,]" screaming that she had been raped and that she wanted to take a shower. She stated that she pulled down the victim's pants and saw that they were "bloody and dirty." Ms. Nicholas testified that she did not allow the victim to shower and drove her to the hospital. She stated that the victim cried during the trip to the hospital, and continued to say that she wanted to take a shower.
 {¶ 32} Upon a careful review of the record, and viewing the evidence in the light most favorable to the prosecution, this Court cannot conclude that the juvenile court lost its way and created a manifest miscarriage of justice when it adjudicated Mr. Robinson a delinquent child by reason of four counts of rape and one count of kidnapping, and concluded that Mr. Robinson compelled the victim to submit to sexual conduct by force. Otten, 33 Ohio App.3d at 340.
 {¶ 33} Although conflicting testimony was presented with respect to the issue of whether the victim was forced or voluntarily submitted to engaging in the sexual conduct, we cannot overturn the juvenile court's judgment simply because the juvenile court chose to believe the State's testimony over that of the defense. State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony."Gilliam. We must give deference to the juvenile court's judgment with respect to the credibility of witnesses. Miller at ¶ 20, citingDeHass, 10 Ohio St.2d at paragraph one of the syllabus. Furthermore, we note that additional material evidence apart from the conflicting testimony was presented, which independently supports the juvenile court's finding that Mr. Robinson used force to not only compel the victim to go to the garage, but also to compel her to submit to engaging in sexual conduct. Accordingly, we hold that the juvenile court's finding, that Mr. Robinson used force to get the victim to walk to the garage and to engage in sexual conduct with the victim, was not against the manifest weight of the evidence.
 {¶ 34} Having already found that the juvenile court's finding on the issue of force was not against the manifest weight of the evidence, we also conclude that there was sufficient evidence to support the finding that Mr. Robinson had used force to take the victim to the garage and to also engage in sexual conduct with the victim. See Roberts.
 {¶ 35} Accordingly, Mr. Robinson's second assignment of error is also overruled.
 IV. {¶ 36} Mr. Robinson's first and second assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
BAIRD, P. J., WHITMORE, J. CONCUR.