OPINION
{¶ 1} Defendant-appellant, Jeffrey P. Novak ("Novak"), appeals his conviction on four counts of gross sexual imposition, fourth-degree felonies in violation of R.C. 2907.05(A)(5), following a jury trial in the Lake County Court of Common Pleas. The trial court ordered Novak to serve, concurrently, four seventeen-month prison sentences at the Lorain Correctional Institution and imposed up to five years of post-release controls. For the following reasons, Novak's convictions are affirmed.
 {¶ 2} Beginning in the Fall of 2000, Novak began working as a teacher's aid for the Lake Academy, a school for teenagers with behavioral problems, in Willoughby, Ohio. Lake Academy shares a building with the Adult Basic Literacy Education program ("ABLE") at the Willoughby-Eastlake Tech Center in Willoughby, Ohio. Lake Academy and ABLE are not formally associated with each other.
 {¶ 3} In the Fall of 2000, the victim ("Doe"), then thirty-two-years old, enrolled in the ABLE program. Doe has been diagnosed with mild mental retardation. Doe's IQ was tested at 59. Doe has very low adaptive behavior skills. She is not capable of independent living and has never lived apart from her family. She does not drive. She cannot handle money independently. Doe needs prompting to care for herself in regard to grooming and hygiene. Academically, Doe functions at a first-to-third grade level, Doe had been working part-time, bussing tables, at a Bob Evans restaurant for twelve years. Doe enrolled in the ABLE program to gain the skills necessary to read the menu at Bob Evans.
 {¶ 4} During the 2000/2001 academic year, Novak and Doe met and became acquainted with each other. Doe would give Novak gifts, such as holiday cards or cookies. Novak's and Doe's relationship continued to develop during Doe's second year in the ABLE program.
 {¶ 5} Between March and June 2002, Novak and Doe began seeing each other outside the Tech Center. On several occasions, Novak took Doe to a church in Mentoron-the-Lake where he performed janitorial services on Friday evenings. Novak also took Doe out for dinner, to see a movie, and to mass.
 {¶ 6} Novak's and Doe's relationship also became more intimate. On one occasion, in Novak's office at the Tech Center, Novak put his hands on Doe's thighs, under her pants and over her underwear. According to Novak, he did this in order to reassure Doe that she was attractive and not "too skinny." On the occasions when Doe was helping clean the church in Mentor-on-the-Lake, Novak fondled and kissed Doe's breasts, touched her vagina, and Doe put her hand on Novak's erect penis.[1]
 {¶ 7} The day after Doe touched Novak's penis, Doe became emotionally distraught and confided what had occurred between her and Novak to a friend/coworker at Bob Evans. The Willoughby and Mentor-on-the-Lake police were notified. Novak gave a written statement to the police in which he admitted that "on less than five occasions" he allowed "inappropriate responses to [Doe's] physical advances." These included "touch[ing] and kiss[ing] her breasts" and "touch[ing] [Doe's] pubic area [while] her hand also was touching my penis." Novak stated that he "would at every reference remind [Doe] that if [he] EVER said or did anything she was the least bit uneasy with to tell [him] at once." Novak, who is married, also wrote that he felt intense guilt for his "adulterous actions" and "for not having been a better role model [for Doe]."
 {¶ 8} Novak raises the following assignments of error on appeal:
 {¶ 9} "[1.] The defendant-appellant's due process rights to fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Sections 5 and 10, Article I of the Ohio Constitution were violated by prosecutorial misconduct in closing argument.
 {¶ 10} "[2.] The trial court violated the defendant-appellant's constitutional right to fair trial and due process as guaranteed [by] theSixth and Fourteenth Amendments to the United States Constitution and Sections 5 and 10, Article I of the Ohio Constitution when it admitted inadmissible hearsay testimony.
 {¶ 11} "[3.] The trial court erred to the prejudice of the defendant-appellant when it denied his motion for acquittal made pursuant to Crim.R. 29(A).
 {¶ 12} "[4.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 13} For the sake of clarity, we shall consider Novak's assignments of error in reverse order. In the last two assignments, Novak challenges the sufficiency and the weight of the evidence supporting his convictions.
 {¶ 14} "`Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury," i.e. "whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52, quoting, Black's Law Dictionary (6 Ed. 1990), 1433. Essentially, "sufficiency is a test of adequacy," that challenges whether the state's evidence has created an issue for the jury to decide regarding each element of the offense. Id. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v.Virginia (1979), 443 U.S. 307, 319; State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *14. In reviewing the sufficiency of the evidence to support a criminal conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."Jenks, 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 15} Weight of the evidence, by contrast, involves "the inclination of the greater amount of credible evidence." Thompkins,78 Ohio St.3d at 387 (emphasis sic) (citation omitted). Generally, the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to determine. State v. Thomas (1982),70 Ohio St.2d 79, at syllabus. When reviewing a manifest weight challenge, however, the appellate court sits as the "thirteenth juror."Thompkins, 78 Ohio St.3d at 387. The reviewing court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
 {¶ 16} Under the Ohio Rules of Criminal Procedure, a defendant may move the trial court for a judgment of acquittal "if the evidence is insufficient to sustain a conviction." Crim.R. 29(A). This district and many others have held that, in order to preserve the right to appeal the sufficiency of the evidence upon which a conviction is based, a defendant must timely file a Crim.R. 29 motion for acquittal with the trial court. When a defendant makes a Crim.R. 29 motion, he challenges the sufficiency of the evidence introduced by the state. Thus, in order to preserve the right to appeal the sufficiency of the evidence, a defendant must comply with Crim.R. 29 governing motions for acquittal. Therefore, the defendant must move for acquittal at the close of the state's case and also at the close of the defendant's case. See, generally, State v. Kaseda, 11th Dist. No. 2002-L-002, 2004-Ohio-1074, at ¶ 32; State v. Barksdale (June 22, 2001), 11th Dist. No. 2000-L-088, 2001 Ohio App. LEXIS 2808, at *3;State v. Perry (Aug. 29, 1997), 11th Dist. No. 94-T-5165, 1997 Ohio App. LEXIS 3884, at *27; State v. Roe (1989), 41 Ohio St.3d 18, 25.
 {¶ 17} In the present case, Novak failed to renew his motion at the close of all the evidence. Since Novak's trial counsel only made a Crim.R. 29 motion at the close of the state's case and failed to renew the motion at the close of Novak's case, Novak waived any error relating to the sufficiency of the evidence underlying his convictions. Therefore, we will only consider whether Novak's convictions are against the manifest weight of the evidence.
 {¶ 18} In order to convict Novak of gross sexual imposition, the state bore the burden of proving, beyond a reasonable doubt, that Novak had "sexual contact with another, not the spouse of the offender[,] * * * when * * * [t]he ability of the other person to resist or consent * * * is substantially impaired because of a mental or physical condition * * * and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person * * * is substantially impaired because of a mental or physical condition * * *." R.C.2907.05(A)(5). "[S]ubstantial impairment must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct." State v. Zeh (1987), 31 Ohio St.3d 99, 103-104. "Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
 {¶ 19} Novak disputes whether Doe's ability to resist was substantially impaired and, if it were, whether he knew or had reasonable cause to believe that her ability to resist was impaired. Novak cites to several instances in the record where Doe exerted her will, either verbally or by pulling away, to terminate sexual contact. Novak also cites to testimony where Doe initiated the sexual contact. Finally, Novak claims that when Doe would express her discomfort, the sexual contact would cease. Therefore, Novak concludes, any sexual contact between himself and Doe was consensual.
 {¶ 20} Novak's argument misconstrues the nature of Doe's impairment by equating the ability to resist with the ability to consent. The gross sexual imposition statute is written disjunctively; the sexual contact between Novak and Doe is unlawful if Doe's ability to resist or consent
is substantially impaired. Even a five-year-old child can resist sexual contact by verbalizing discomfort or the desire that the contact cease and by pulling away; the child's ability to resist, however, does not mean that the child has consented to the initial contact or even has the ability to do so. Novak could still be found guilty provided the state proved that Doe's ability to appraise the nature of her conduct was diminished.
 {¶ 21} At trial, psychologist Marianne Wohl ("Dr. Wohl") testified that Doe was not competent to consent to sexual relationships or contact. Dr. Wohl testified that Doe's low IQ diminished her capacity for making decisions and that Doe's minimal carnal knowledge prevented her from making an informed decision regarding whether to engage in sexual contact. Although Doe was familiar with the differences between male and female anatomy, Doe's conception of sex was "having a baby" and kissing. Doe described "pregnancy" as when animals from a man's penis open the eggs in a woman's vagina, although she was uncertain what this meant. Doe's familiarity with sexually transmitted diseases and contraception was minimal. Dr. Wohl also testified that Doe did not know the term "sexual intercourse" until Novak explained it to her, but Doe could not remember any details. State v. Bohannon (Mar. 15, 1989), 1st Dist. No. C-880004, 1989 Ohio App. LEXIS 831, at *3 (psychologist's report evaluating extent of victim's mental retardation is "sufficient evidence to permit reasonable minds to reach different conclusions as to whether the victim's ability to appraise the nature of or control her conduct was substantially impaired"); State v. Joseph (July 24, 1985), 1st Dist. No. C-840751, 1985 Ohio App. LEXIS 6953, at *8-*9 ("[a] finding of mental retardation * * * could logically lead one to believe that a person * * * is substantially impaired" under R.C. 2907).
 {¶ 22} The state also introduced evidence that Doe cannot read or write beyond a third grade level and would never progress beyond that level. Examples of Doe's schoolwork and writing were admitted into evidence. There was also evidence that Doe was incapable of independent living.
 {¶ 23} Most importantly, the jury was able to witness Doe testifying at trial. This court has consistently recognized that the jury is in the best position to view evidence and that the jury's determinations of factual issues should be given great weight. See, e.g. State v. Wright,
11th Dist No. 2000-P-0128, 2002-Ohio-1432, at ¶¶ 23-24 (citations omitted). Doe was often confused and easily frustrated when giving responses. Her memory about dates, names, and places was imperfect. Doe demonstrated uncertainty about the meanings of common words, such as "scandal," "volunteer," "massage," "intimate," and "resist." The jury also observed Doe's demeanor on the stand. What effect Doe's demeanor had on the jury we cannot say, limited as we are to the written record and transcript of the trial. State v. Hillock, 7th Dist. No. 02-538-CA, 2002-Ohio-6897, at ¶ 21 ("`substantial impairment' * * * may be proven * * * by permitting the trier of fact to obtain its own assessment of the victim's ability to either appraise or control her conduct") (citation omitted).
 {¶ 24} All of this evidence is credible evidence that Doe's ability to resist or give consent to the sexual contact she engaged in with Novak was substantially impaired by a mental condition. In re Sechler (Aug. 29, 1997), 11th App. No. 96-T-5575, 1997 Ohio App. LEXIS 3886, at *19-*20 (substantial impairment established through expert testimony and the trier of fact's first-hand observation of the victim's demeanor and speech patterns); State v. Bienkowski (Nov. 23, 1983), 8th Dist. No. 46795, 1983 Ohio App. LEXIS 13722, at *4.
 {¶ 25} As to the element that Novak knew or had reasonable cause to believe that Doe was impaired, the jury could reasonably infer this from their observation of Doe's demeanor and the fact that Novak interacted with Doe over a considerable period of time and in a variety of social situations. Hillock, 2002-Ohio-6897, at ¶ 32; Sechler, 1997 Ohio App. LEXIS 3886, at *20; Joseph, 1985 Ohio App. LEXIS 6953, at *9;Bienkowski, 1983 Ohio App. LEXIS 13722, at *4-*5. There was further evidence that Novak knew of Doe's impairment. Doe's teacher in the ABLE program testified that he informed Novak that Doe functioned on a first or second grade level. A Valentine's Day card and a Christmas note from Doe to Novak were also in evidence and clearly demonstrated Doe's childlike mental capabilities. Novak had previously worked with the mentally retarded as a direct care worker. Novak lamented that he had not been a better "role model" for Doe. Viewing this evidence in a light most favorable to the prosecution, the jury could reasonably find that Novak knew or had reason to know of Doe's impairment.
 {¶ 26} In response, Novak cites to contrary evidence on both of these issues. Novak points out that Doe used public transportation by herself; that she babysat her nephew; that she maintained regular employment; that she gave the impression of being able to read. While these facts are probative evidence that Doe was not dysfunctionally impaired or that Novak could not have known of her impairment, they are far from being conclusive or determinative of either issue. Where there are inconsistencies in the evidence, it is for the trier of fact to resolve the differences. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. We cannot say that the trier of fact either lost its way or created a manifest miscarriage of justice by crediting the state's evidence over Novak's evidence.
 {¶ 27} Novak also argues under these assignments of error that the state failed to prove that Novak touching Doe's "pelvic bone" was for the purpose of sexual arousal or gratification. Novak testified that his purpose in touching her was to reassure her about her looks.
 {¶ 28} It is well-established that sexual arousal or gratification may be inferred from the circumstances surrounding the touching and from the touching itself. State v. Tennyson, 11th Dist. No. 98-L-219, 2001-Ohio-8814, 2001 Ohio App. LEXIS 5211, at *8-*9 (citations omitted);In re Bloxson (Feb. 6, 1998), 11th Dist. No. 97-G-2062, 1998 Ohio App. LEXIS 420, at *3-*4 (citation omitted); State v. Said (Mar. 26, 1993), 11th Dist. No. 92-L-018, 1993 Ohio App. LEXIS 1751, at *16; State v.Kramer (Aug. 12, 1988), 11th Dist. No. 1779, 1988 Ohio App. LEXIS 3323, at *7 In the present case, Novak admitted to his romantic involvement with Doe and his attraction to her. The jury was entitled to draw its own conclusions about Novak's intent in placing his hands under her pants.
 {¶ 29} Novak's third and fourth assignments of error are without merit.
 {¶ 30} At trial, Doe testified that Novak did not touch her vagina. The state proffered the testimony of Heather Riggle ("Riggle"), Doe's co-worker at Bob Evans, that Doe told her that Novak had touched Doe's vagina. Over the objection of defense counsel, the trial court admitted Riggle's testimony under the excited utterance exception to the hearsay rule. In Novak's second assignment of error, he argues the trial court erred by admitting the hearsay testimony into evidence and the court's error was due to judicial bias.
 {¶ 31} A trial court has "broad discretion to determine whether a declaration should be admissible as a hearsay exception." State v.Dever, 64 Ohio St.3d 401, 410, 1992-Ohio-41 (citation omitted). "A trial court abuses its discretion when it acts in an unreasonable, arbitrary or unconscionable manner." State v. Finnerty (1989), 45 Ohio St.3d 104, 107, citing State v. Jenkins (1984), 15 Ohio St.3d 164, 222.
 {¶ 32} Under the Ohio Rules of Evidence, "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is admissible as an exception to the hearsay rules. Evid.R.803(2). While there is no requirement that the statement be contemporaneous with the event or condition causing the statement to be made, "the statement must be made while the declarant is still under the stress of the event and the statement may not be a result of reflective thought." State v. Taylor
(1993), 66 Ohio St.3d 295, 303 (emphasis sic); cf. State v. Gooden, 8th Dist. No. 81320, 2003-Ohio-2864, at ¶ 41 (statement made by developmentally delayed rape victim, made four days after the rape, was admissible as excited utterance where the state laid a proper foundation indicating that the victim was still under the stress of the rape).
 {¶ 33} In the present case, Doe's statement was made about fifteen hours after the sexual contact. During that time, Novak had dropped Doe off at her brother's house. The next day, Doe went to work at Bob Evans. Doe had been at work for several hours before Riggle arrived. Doe asked to speak with Riggle in private. Thereupon, Doe became hysterical and, at Riggle's prompting, indicated that Novak had touched her vagina. In overruling Novak's objection, the trial court stated that it had considered "the extent to which [Doe] was still under the stress of excitement caused by the startling events when the statements were made" and "whether the circumstances were sufficient to still her reflective faculties."
 {¶ 34} In this case, the state failed to lay a proper foundation for the admission of Doe's statement as an excited utterance. There is no evidence in the record to suggest what effect the stress of the event was having upon Doe from the time Novak dropped her off at home until the time she confided in Riggle the following day. Doe chose to confide in Riggle, waited for her arrival, and sought out a private area before disclosing that something had happened with Novak. This conduct demonstrates reflection, not excitement. Under these circumstances, the trial court abused its discretion by admitting Riggle's hearsay testimony. Cf. State v. Scarl, 11th Dist. No. 2002-P-0091, 2003-Ohio-3493, at ¶ 63.
 {¶ 35} However, the admission of Riggle's testimony was harmless error. The substance of Riggle's testimony was that Novak had touched Doe's vagina. Novak admitted to touching Doe's pubic area for sexual arousal during his trial testimony and in his written statement to the police. As a matter of law, touching another's "pubic area" for sexual gratification or arousal constitutes "sexual contact" as much as touching another's vagina. R.C. 2907.01(B). Since the element of "sexual contact" on this count of gross sexual imposition was conclusively established by Novak's own testimony, there was no prejudice in the admission of Riggle's testimony. Since the admission of Riggle's testimony was harmless error, we will not address Novak's arguments that the admission of this testimony violated Evid.R. 613 and that the admission was due to judicial bias.[2]
 {¶ 36} Novak's second assignment of error is overruled.
 {¶ 37} In the first assignment of error, Novak alleges that he was deprived of a fair trial by prosecutorial misconduct during closing arguments. As a general rule, "wide latitude is given to counsel during closing argument to present their most convincing positions." State v.Phillips, 74 Ohio St.3d 72, 90, 1995-Ohio-171 (citations omitted). Before a conviction is reversed for prosecutorial misconduct, a reviewing court must determine "whether the [prosecutor's] remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." State v. Smith (1984), 14 Ohio St.3d 13, 14 (citation omitted). The closing argument must be considered in its entirety before determining if the prosecutor's remarks are prejudicial. State v. Moritz
(1980), 63 Ohio St.2d 150, 157; Smith v. Phillips (1982), 455 U.S. 209,219.
 {¶ 38} In the present case, Novak raised no objections during the prosecutor's closing argument. Therefore, Novak's argument will be considered under a "plain error" standard of review. State v. Slagle
(1992), 65 Ohio St.3d 597, 604; Crim.R. 52(B). "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long
(1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 39} Novak argues that the prosecutor's statement that she doesn't believe "that the law is that you can take advantage of somebody that is mentally retarded" is a misstatement of the law. We disagree. During her closing argument, the prosecutor reviewed all the elements of gross sexual imposition with the jury using the technical terms used in the statute. Mental retardation is a mental condition that can substantially impair a person's ability to resist or consent to sexual contact. We find no misconduct in the prosecutor's reference to those elements and what they imply in the manner quoted above.
 {¶ 40} Novak objects to the prosecutor's characterization of the defense that Novak was not aware of Doe's impairment as a "whitewash" that Novak was attempting to "sell" the jury. The prosecutor further stated:
 {¶ 41} "This defense is colossally offensive. What he wants you to buy is that, if you're mildly retarded, if you are anything short, and forgive me, of nonverbal, comatose, drooling, I think he used that word, that it's okay to make sexual advances, you can consent and you can resist. That's what he's trying to sell to you. * * * If you follow that logic, you might as well open up all of our mentally retarded residential facilities and let people like him in to form these loving, blossoming romances with people like [Doe]. That's what they want you to believe. That's offensive."
 {¶ 42} While these comments are overly zealous, they do not impugn Novak's veracity or defense counsel's integrity. "Whitewash" does not imply lying, but rather a slanted or biased presentation of the evidence. There were very few disputed facts before the jury; Novak's defense largely rested upon the interpretation of the evidence given by the jury. There is no requirement that a prosecutor's language must be neutral in its characterizations of the evidence or defense strategy.State v. Brown (1988), 38 Ohio St.3d 305, 317 (acknowledging that closing arguments may be "colorful or creative").
 {¶ 43} The prosecutor's references to the "institutionalized mentally retarded" are not improper. As noted above, Novak's defense was premised on equating the ability to resist with the ability to consent. The prosecutor has taken the implications of such an argument to their logical extreme — even the severely mentally retarded possess the ability to resist. The fact that Doe herself is not institutionalized is irrelevant as there was abundant testimony that she lacks the capacity to live independently. If Doe did not reside with her family, she would have to live in a group home or other residential facility.
 {¶ 44} The prosecutor's comment that Novak's defense was "offensive" was not a fair characterization of defense strategy and contributed nothing to the jury's understanding of the issues. Here, the prosecutor improperly interjected her personal opinion of Novak's conduct and trial strategy. State v. Draughn (1992), 76 Ohio App.3d 664, 671 (the prosecutor "cannot inflame the passion and prejudice of the jury by appealing to community abhorrence or expectations with respect to crime in general, or crime of the specific type involved in the case") (citation omitted).
 {¶ 45} In the following portions of her closing argument, Novak further asserts that the prosecutor misrepresented the evidence in a number of instances. When reviewing Dr. Wohl's testimony, the prosecutor stated: "[Doe] doesn't even adequately demonstrate an ability to comprehend what the mechanics are of sex * * *. She says: He puts his penis up your vagina, I think. Animals come out to make eggs from the guy. The lady has the eggs, but the guy opens it. I don't know. Animals come out. [Doe] gets that from what [Novak] tells her, what he explains to her. Worms come out of a man's penis to make a baby. * * * Dr. Wohl tells us that [Doe] doesn't know about birth control, she doesn't know what sexual intercourse is until [Novak] explains it to her, that worms come out * * *."
 {¶ 46} As Novak correctly points out, Dr. Wohl only testified that Doe told her that Novak explained what "sexual intercourse" meant and that Doe could not remember, specifically, what Novak had told her. Doe explained pregnancy to Dr. Wohl in terms of animals and eggs, but did not connect her understanding of pregnancy in any way with Novak. When questioned by the prosecutor, Novak denied ever explaining "sexual intercourse" to Doe. Therefore, the prosecutor did misstate the evidence by representing to the jury that Novak explained "sexual intercourse" and "pregnancy" to Doe by reference to worms, eggs, and animals.
 {¶ 47} In fact, the prosecutor placed before the jury evidence that was not in the record. In a statement taken from Doe's sister, Linda Skolaris, it was reported that Novak "told [Doe] that boys have worms in their penis and they put it up the vagina of a girl to make a baby." This statement, which constitutes triple hearsay, was not in evidence. It was improper for the prosecutor to refer to it in her closing remarks to the jury. Smith, 14 Ohio St.3d at 14 ("It is a prosecutor's duty in closing arguments to avoid efforts to obtain a conviction by going beyond the evidence which is before the jury.") (citation omitted).
 {¶ 48} Novak asserts that the prosecutor also misrepresented the record by stating that Novak was teaching Doe how to tell time. Dr. Wohl and Novak both testified that Doe could tell digital time. Novak explained that he was only teaching Doe how to read Roman numerals on the face of a clock. The detective who took Novak's statement testified that Novak said he was teaching Doe to read the face of a clock. In light of this testimony, the prosecutor's statement that Novak was teaching Doe to tell time mischaracterized the evidence.
 {¶ 49} These instances of prosecutorial over zealous statements, however, did not deny Novak a fair trial. There was evidence before the jury that Novak had discussed with Doe sexual intercourse. The specifics were not relevant. It was not prejudicial to characterize the testimony that Novak was teaching Doe to read the face of a clock as Novak admitted to teaching Doe to tell time. Considering the prosecutor's closing argument in its entirety, Moritz, 63 Ohio St.2d at 157; Phillips,455 U.S. at 219, the unchallenged prosecutorial statements during closing argument do not rise to the level of plain error. Therefore, Novak's first assignment of error lacks merit.
 {¶ 50} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas is affirmed.
Ford, P.J., Rice, J., concur.
[1] These four incidents correspond to the conduct charged in the four indictments brought against Novak.
[2] Any concerns of Novak that the fundamental fairness of the trial was compromised by judicial bias should have been addressed by the procedures outlined in R.C. 2701.03. State v. LeMar, 95 Ohio St.3d 181, 189,2002-Ohio-2128; Petralia v. Petralia, 11th Dist. No. 2002-L-047, 2003-Ohio-3867, at ¶ 20. Novak's concerns of bias, however, appear to be limited to the trial judge's decision to admit Riggle's hearsay testimony. The trial judge made several comments expressing his belief in Doe's veracity and was clearly solicitous of her welfare. However, these comments were not made in the presence of the jury. Nor were these comments the basis for the court's decision to admit Riggle's testimony as an excited utterance.