OPINION
{¶ 1} Kathi Sue Bohache was found guilty by a jury in the Montgomery County Court of Common Pleas of two counts of aggravated theft over $100,000. She was sentenced to four years of incarceration on each count, to be served concurrently, and was ordered to pay $247,867.50 in restitution. Bohache appeals from her conviction and sentence.
 {¶ 2} At all relevant times, Parking Management, Inc. ("PMI") managed the city of Dayton's parking garage at the convention center, known as the transportation center, and Bohache worked at the garage. Bohache became a supervisor at the garage in the fall of 2002. Under its arrangement with the city, PMI deposited funds from this garage into one of the city's "zero-balance accounts" at Fifth Third Bank. Normally, there would be a deposit for each business day.
 {¶ 3} In early 2004, the city of Dayton discovered that only three deposits had been made into its bank account from the parking garage during the month of January. Upon discovery of the low number of deposits, the city contacted one of the owners of PMI, who forwarded copies of deposit slips that he had received from the garage to the bank. After confirming that a significant number of January deposits were missing, the city and PMI expanded their investigation back to December 2002. Audits by the bank and PMI confirmed that approximately $246,000 in deposits was missing from December 2002 through January 2004. Entire deposits were missing, not portions of any deposit.
 {¶ 4} In addition to the discovery of missing funds, the investigation revealed that over 150 deposit slips presented to PMI from the parking garage were counterfeit, meaning that they contained a legitimate branch number and teller identification, but the bank had no record of the transaction. Forty deposit stamps did not contain a branch number or teller identification information, and 38 deposit slips contained dates on which the bank had not been open. There were other problems with the deposit slips as well. The Fifth Third bank protection unit investigated and ruled out the possibility that a bank employee was involved in the thefts. It also confirmed that no other bank customers were experiencing problems with deposit slips or missing night deposits similar to those experienced by PMI.
 {¶ 5} According to the PMI employees and owners who testified at trial, supervisors were charged with reconciling cashiers' tickets and funds after each shift, then preparing a deposit slip for all of the funds. Usually, the funds were to be left in the safe for pick-up by someone from PMI's office, who would deliver the funds to the bank. During Bohache's tenure as a supervisor, however, she began making deposits herself. It is unclear whether anyone at PMI authorized her to do so. She also took money home with her, sometimes dropping it after hours at bank branches in outlying parts of the city. According to other employees, there would never be a reason to deposit funds at night or at locations other than the downtown branch. A search of Bohache's residence uncovered ink pads, money band wrappers, a "For Deposit Only" stamp, and some money band wrappers that had already been stamped. The problems with the deposits stopped when Bohache left PMI.
 {¶ 6} Bohache was indicted on two counts of aggravated theft. In count one, Bohache was charged with theft of over $100,000 in violation of R.C. 2913.02(A)(2), which provides that she knowingly acted with purpose to deprive the owner of property by exerting control over the property beyond the scope of the owner's express or implied consent. In count two, she was charged with theft of over $100,000 in violation of R.C. 2913.02(A)(3), which provides that she acted with purpose to deprive the owner of property by deception. After a jury trial, Bohache was found guilty on both counts and was sentenced accordingly. On appeal, Bohache raises three assignments of error.
 {¶ 7} Bohache's first assignment of error challenges the sufficiency of the evidence. Specifically, she claims that the state failed to prove that she had acted beyond the scope of the owner's consent. She points to the city of Dayton as the "owner" and notes that the only city employee to testify, the city finance technician who audited the garage's account, did not address the scope of the city's consent. She further contends that no evidence was presented that "she even knew the true owner of the money collected at the Transportation Center [was] the City of Dayton," not PMI, and that the alleged deception was linked only to PMI. For these reasons, Bohache claims that she should have been acquitted.
 {¶ 8} Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955),162 Ohio St. 486, 124 N.E.2d 148. In considering the sufficiency of the evidence, the pivotal question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 9} R.C. 2913.02(A) states:
 {¶ 10} "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: * * * (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent; (3) By deception; * * *
 {¶ 11} "(B)(1) Whoever violates this section is guilty of theft."
 {¶ 12} Bohache claims that there was no evidence that she acted beyond the scope of the city's consent. It is clear from the evidence, however, that as a garage supervisor, she would have known that PMI managed the garage for the city and that PMI was not authorized to keep the income from the garage. PMI operated the garage on behalf of the city, and thus functioned in the role of a "person authorized to give consent" specified by R.C. 2913.02(A)(2). The state presented ample evidence that Bohache exceeded the scope of the authority granted to her by PMI. She was trained about procedures whereby bank deposits were made through the PMI office staff and about the unusual circumstances in which supervisors would make their own deposits. Nonetheless, Bohache implemented her own procedures for handling the deposits, including taking money to branches other than the downtown branch and filing her paperwork sporadically. According to PMI employees, she was the only supervisor to conduct business in this way. Moreover, she was the only supervisor to skip deposits altogether. Money wrappers and stamping supplies were also found at her residence, and other employees testified that supervisors would never have had good reason to take money home with them. Based on this evidence, the jury could have found, beyond a reasonable doubt, that Bohache had acted beyond the scope of the express or implied permission of PMI and the city.
 {¶ 13} Bohache also claims that she should have been acquitted because there was insufficient evidence from which the jury could conclude that she had exerted control over the city's funds by deception. We disagree. The state's evidence showed that, by deceiving PMI, she deprived the city of more than $240,000 in deposits. Bohache did so by falsifying deposit slips, failing to make numerous deposits, and subverting the usual systems established by PMI, which, if used, would have provided some safeguards against theft. The evidence also showed that Bohache had taken money home with her, in violation of the usual procedures. The bank had used various processes to assure that there was no internal theft at the bank and to verify that no other bank patrons had encountered problems with the night deposit box, which Bohache claimed to have used. The thefts stopped as soon as Bohache was relieved of her duties. Based on this evidence, the jury could have found that the state had proven theft by deception beyond a reasonable doubt. Accordingly, Bohache's conviction was supported by sufficient evidence.
 {¶ 14} Bohache also argues that the verdict forms should have required the jury to determine the value of the property involved in the theft, as required by R.C. 2913.61(A). The state argues that the jury's finding of aggravated theft, which, by definition, requires a value over $100,000, and the jury instruction that also specified a value over $100,000, served the same purpose as a specific monetary finding by the jury on the verdict form.
 {¶ 15} The better practice is for the trial court to require the jury to determine the value of the property involved in the theft and to state that value in the verdict form. See 4 Ohio Jury Instructions (2005), 98, Section 413.40, Comment. However, we agree with the state's view that the R.C. 2913.61(A) requirement that the jury make a "finding of value as part of the verdict" can be satisfied in a number of ways, including, but not limited to, the insertion of a monetary amount on the verdict form. The central concern is that the jury express a finding as to value, not the form in which that value is expressed. SeeState v. Bateman (June 26, 1997), Franklin App. No. 96APA09-1159, citing State v. Park (1962), 174 Ohio St. 81,186 N.E.2d 736 and State v. Ridgeway (1972), 35 Ohio App.2d 254,256, 301 N.E.2d 716. In this case, there can be no doubt about the jury's conclusion that the value of the money obtained by Bohache — beyond the scope of PMI's consent and by deception — exceeded $100,000. Accordingly, there is no basis to reverse these convictions for failure to include a monetary amount on the verdict forms.
 {¶ 16} In her second assignment of error, Bohache reasserts her argument that her conviction was supported by insufficient evidence and contends that it was against the manifest weight of the evidence. We have already addressed the sufficiency argument.
 {¶ 17} When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, citing State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin, 20 Ohio App.3d at 175.
 {¶ 18} Although the case against Bohache was largely circumstantial, circumstantial evidence possesses no less probative value than direct evidence. Jenks,61 Ohio St.3d at 272. The state established that Bohache had direct access to the funds, that she had deviated from PMI's usual procedures in her handling of the money, which presented her with ample opportunity to take the money, and that other sources of theft had been investigated and ruled out. It also established that deposits slips that had been presented to PMI by Bohache had been falsified in numerous ways and that some of the supplies necessary to effectuate such falsification had been in her possession. Although Bohache did present her own version of events, which included claims of extreme disorganization at the garage, a supervisor with Alzheimer's disease, and various explanations for making deposits at unusual hours and locations, the jury was not required to credit this testimony. Viewing the record as a whole, we cannot find that the evidence weighed heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice occurred. As such, Bohache's conviction was not against the manifest weight of the evidence.
 {¶ 19} The second assignment of error is overruled.
 {¶ 20} In her third assignment of error, Bohache challenges the imposition of non-minimum sentences based on findings made by the judge, rather than the jury. The state concedes that, in light of the supreme court's recent decision in State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 245 N.E.2d 470, Bohache's argument has merit. Foster held that parts of Ohio's felony sentencing scheme are unconstitutional, including R.C.2929.14(B), which required judicial factfinding before imposition of non-minimum sentences. Id., following Blakely v.Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, and Apprendiv. New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348,147 L.Ed.2d 435. Because Foster held the statutes under which Bohache's sentence was imposed to be unconstitutional and severed them from the sentencing provisions of the Revised Code, we must reverse her sentence and remand this case for a new sentencing hearing.Foster, at ¶ 104-105.
 {¶ 21} The third assignment of error is sustained.
 {¶ 22} Except with respect to the sentence, the judgment of the trial court will be affirmed. The matter will be remanded for resentencing in accordance with Foster. .
Donovan, J. and Milligan, J., concur.
(Hon. John R. Milligan retired from the Fifth District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio).