JOURNAL ENTRY AND OPINION
{¶ 1} Following a trial to the bench, defendant-appellant Karen McKissick was convicted of gross sexual imposition, extortion, and two counts of theft with furthermore clauses alleging the victim was a disabled adult. She now appeals from those convictions and the sentences imposed.
 {¶ 2} Appellant presents six assignments of error; in them, she challenges both the sufficiency of the state's evidence and the trial court's determination that her theft convictions were fourth-degree felonies for sentencing purposes. Upon a review of the record, this court finds no merit to her challenges. Consequently, her convictions and sentences are affirmed.
 {¶ 3} Appellant's convictions result from her interactions with the victim, Robert Poloha. Poloha worked as a "houseman" at a downtown hotel for many years; in approximately 1998, appellant also became employed there as a housekeeper. The two became acquainted.
 {¶ 4} According to the testimony presented at trial, Poloha was born in October 1953, and had lived with his parents since birth. During his school years, Poloha attended "special education" classes. He could neither cook for himself, nor read or write anything but his own name; during his adulthood, he worked in simple jobs, such as dishwashing and grocery packing. Poloha described his job duties at the hotel as "vacuum hallways, wash down walls,***[and], if somebody throws up, to go over there, to clean up***." *Page 2 
 {¶ 5} Poloha testified that he would give his paycheck to his mother; she would place most of the money in their joint checking account, and give him an "allowance" of a hundred and fifty dollars. Whatever he did not spend during that pay period, he kept in the bank envelope she gave him, along with the deposit receipt. Poloha's father testified he helped his son save for retirement by using some of Poloha's wages to purchase silver coins.
 {¶ 6} Poloha testified that, soon after meeting appellant, she asked him while he was working to come into a room she was cleaning. Poloha stated that she then performed oral sex upon him. A few days later, appellant came to Poloha and told him she was pregnant and she wanted money from him "for the abortion."
 {¶ 7} Poloha indicated similar scenarios occurred "continuously" over a period of "close to four years," and that he "would always [come] up with the amount of money she asked." He further indicated appellant ultimately began telephoning him at his home, urging him to give her more and asserting that, if he did not, she would inform his parents he made her pregnant.
 {¶ 8} Poloha's mother testified that she and his father assumed he was talking to a friend from work. However, on one occasion in 2001, she noticed while Poloha was on the telephone that he was "very agitated." She "took over the phone and***asked what it was" about. *Page 3 
 {¶ 9} A woman answered that "she need[ed] $500." After Poloha told his mother that the money "was for an abortion," she informed the woman on the telephone that she could have the money if they could meet in a public place. The woman told her to "give the money to Rob and she would get it from him." Poloha's mother refused; soon thereafter, appellant left her employment and took a job at another hotel. Appellant ceased calling Poloha. The Polohas subsequently decided not to pursue the matter.
 {¶ 10} According to the record, appellant returned to her housekeeping job at the downtown hotel in the spring of 2005. Poloha indicated during his testimony that, to his dismay, appellant's pattern of behavior with him recommenced.
 {¶ 11} He testified that on one occasion, he went into a room with appellant, and "she took my penis and rubbed it against her groin." He further testified that "she would grab hold of my penis" through his clothing and "not let go." He stated that this occurred "10, 15 times" over the course of "6 or 8 months," from the time appellant returned to her employment at the hotel until December, 2005. Approximately a week after each incident, she told him she was pregnant.
 {¶ 12} Poloha testified that appellant also told him that if he did not give her money for an abortion, she would tell his parents, and that he would lose his *Page 4 
job. She reminded him that since he did not "know how to read or write that good, [he would] not be able to get another job." She also told him that if she did not have the money for an abortion, she would wrap the baby up and leave it on his parents' doorstep.
 {¶ 13} Poloha indicated that, in the face of appellant's threats, he continued to meet appellant's demands for money. He indicated he was embarrassed that he again had become involved in the situation, and fearful that taking care of a baby would be too much for either him or his parents. Thus, he set up a separate savings account at another banking institution; he stated he needed help to do this and was aided by the bank's personnel.
 {¶ 14} Eventually, Poloha had no more money left either in his bank envelopes or his bank account to give appellant. He then began to "cash in" his silver coins at the coin shop where he and his father had purchased them "for whatever money amount [he] could get." Poloha meticulously kept his receipts from each transaction.
 {¶ 15} Poloha's mother testified that she and his father began to notice he seemed "sad" and "always short" of money. His father testified that in December 2005, when his silver coins were almost completely depleted, Poloha admitted to his parents he again had been paying appellant money. *Page 5 
 {¶ 16} Upon learning this, when appellant telephoned Poloha, his father spoke to her. Poloha's father told her she would not get any more money; she responded by stating she would "charge Robert with rape." Thereafter, Poloha's father placed a recording device on the telephone; the next time appellant called the Poloha home, he tape-recorded the conversation.
 {¶ 17} The final incident between appellant and Poloha occurred on New Year's Day, 2006. Appellant spotted Poloha in the elevator, and asked him to get off for a minute "to talk." Poloha entered the hallway, and appellant then "grabbed [his] penis and she said, Rob, I want to have some sex. I want to rub it against my c***. I'm not going to let it go. If I have to, I'm going to pull it out."
 {¶ 18} Poloha's efforts to push her away proved unsuccessful; appellant produced a door key, opened a nearby room, and "pulled [him] in and she was pulling hard." Next to the bed, appellant "started unbuckling [his] pants, started pulling down [his] shorts." She then pulled down her own clothing. After "she got done rubbing [his penis] on her" vaginal area, she finally "let go of it."
 {¶ 19} Appellant called Poloha the next day. With the tape-recording of this particular conversation in hand, Poloha's parents took him to the police department to file a complaint against her. *Page 6 
 {¶ 20} Det. Michael Kovach was assigned to the case. He obtained a written statement from Poloha, received the tape-recording and Poloha's receipts, and proceeded to investigate the matter.
 {¶ 21} During the investigation, appellant, too, provided a written statement to Kovach. Appellant claimed that Poloha "was always asking for sex," and that it was his idea to claim she was pregnant so they could get money from his parents.
 {¶ 22} As a result of the investigation, appellant was indicted on six counts; viz., two of gross sexual imposition, one count of kidnapping, one count of extortion, and two counts of theft in the amount of between $500 and $5000, with furthermore clauses alleging the victim was a disabled adult. Appellant's case proceeded to a bench trial.
 {¶ 23} The state presented the testimony of Poloha, his parents, and Kovach. Appellant testified in her own behalf. The trial court subsequently acquitted appellant of counts one and three, but found appellant guilty of the following counts: 2) gross sexual imposition upon a person whose ability to consent was substantially impaired because of a mental condition; 4) extortion; 5) theft by deception; and 6) theft by threat.
 {¶ 24} The trial court ultimately sentenced appellant to concurrent terms of three years on count four, one year on each of the remaining counts, and ordered her to pay restitution to Poloha "in the sum of $3500." *Page 7 
 {¶ 25} Appellant presents six assignments of error, as follows:
 {¶ 26} "I. The state failed to present sufficient evidence that thealleged victim's ability to resist or consent was substantially impairedand that the appellant knew or had reason to know that the victim was soimpaired.
 {¶ 27} "II. The state failed to present sufficient evidence that theappellant exposed or threatened to expose matters tending to subject thevictim to hatred and/or contempt.
 {¶ 28} "III. The state failed to present sufficient evidence that theappellant threatened the state's victim in the commission of a theftoffense.
 {¶ 29} "IV. The state failed to present sufficient evidence todemonstrate that the state's victim was a disabled adult as defined byR.C. 2913.01(D).
 {¶ 30} "V. The trial court incorrectly sentenced the defendant oncount five under the mistaken belief that it was a fourth degree felonywhen the verdict only reflects a felony of the fifth degree.
 {¶ 31} "VI. The trial court incorrectly sentenced the defendant oncount six under the mistaken belief that it was a fourth degree felonywhen the verdict only reflects a felony of the fifth degree." *Page 8 
 {¶ 32} Appellant argues in her first through fourth assignments of error that, as to each offense of which she was convicted, the state failed to present sufficient evidence to prove an essential element. She contends the trial court, therefore, should have granted her motions for acquittal on these charges.
 {¶ 33} When ruling on a defendant's motions for acquittal, the trial court is required to view the evidence in a light most favorable to the prosecution to determine if reasonable minds could reach different conclusions as to whether the material elements of an offense are proven beyond a reasonable doubt. State v. Dennis, 79 Ohio St.3d 421,1997-Ohio-372; State v. Martin (1983), 20 Ohio App.3d 172.
 {¶ 34} Appellant challenges her conviction for violating R.C. 2907.05(A)(5), gross sexual imposition, claiming the state failed to prove Poloha was a person whose ability to resist or consent was "substantially impaired because of a mental***condition," and appellant either knew or had reasonable cause to believe this fact. "Substantial impairment" is established by demonstrating a present reduction, diminution or decrease in the ability to either appraise the nature ofor control one's conduct. State v. Zeh (1987), 31 Ohio St.3d 99,103-104; see also, State v. Novak, Lake App. No. 2003-L-077,2005-Ohio-563, ¶ 20.
 {¶ 35} Substantial impairment, moreover, "can be shown to exist by the testimony of people who have interacted with the victim, and by allowing the *Page 9 
trier of fact to do its own assessment of the person's ability to appraise or control his or her conduct." State v. Brady, Cuyahoga App. No. 87854, 2007-Ohio-1453, ¶ 78. In this case, Poloha's father testified that his son functioned mentally at the level "of a second grader," and that he could not live on his own because he could neither cook for himself, nor read or write. He further testified that, although his son had a hard time learning, he was "conscientious."
 {¶ 36} Poloha himself testified that although he was over fifty years old, he still lived with his parents. They took care of him; they gave him an "allowance." Moreover, he believed appellant when she told him he had made her pregnant after mere sexual contact; clearly, his concept of sexual intercourse was limited. Furthermore, the fact that appellant interacted with Poloha over an extended period of time, when coupled with his demeanor, could have led the fact finder to infer that appellant was aware of his cognitive limitations.
 {¶ 37} Reasonable minds could conclude, therefore, from the evidence presented, that Poloha's ability to appraise the nature of his conduct was substantially impaired, and that appellant knew this. Id., ¶ 79;State v. Novak, supra ¶¶ 21-25.
 {¶ 38} In this same vein, appellant challenges the state's evidence that Poloha was a "disabled adult" for purposes of the furthermore clauses contained *Page 10 
in counts five and six. Appellant was convicted in those counts of theft in violation of R.C. 2913.02.
 {¶ 39} R.C. 2913.01(DD) defines a "disabled adult," in pertinent part, as a "person who is eighteen years of age or older and has some impairment of body or mind that makes the person unable to work at any substantially remunerative employment that the person otherwise would be able to perform and that will, with reasonable probability, continue***without any present indication of recovery from the impairment***." The testimony of both Poloha and his parents established that his mental function remained at the level of a "second grader," and that his employment during adulthood had consisted of only simple jobs, such as bagging groceries and vacuuming floors.
 {¶ 40} Appellant additionally challenges her convictions for extortion in violation of R.C. 2905.11(A)(5), and theft in violation of R.C. 2913.02(A)(4). She claims the state failed to prove that she made a "threat," an essential element of the theft charge in count six, and, further, that she obtained a thing of value by threatening to expose any matter tending to subject Poloha to "hatred and/or contempt," as charged in count four.
 {¶ 41} "Threat" is defined in Webster's New Collegiate Dictionary, in part, as "an expression of intention to inflict evil, injury or damage." "Contempt" is synonymous with "lack of respect." *Page 11 
 {¶ 42} Poloha testified that appellant told him that if he did not give her money for an abortion, he would suffer some "disagreeable consequences." State v. Stone (Jan. 31, 1996), Hamilton App. No. C-950185. For instance, he would lose his job, and in view of his limitations, he would not be able to find another one. He testified he had worked in his position for nearly thirty years; it was by that time a source of pride and security for him.
 {¶ 43} For another instance, appellant would "tell [his] parents." Poloha testified that his parents had been "disappointed in" him in 2001 "because***[he] didn't tell them that [he] was giving money to [appellant] every week when she said she needed an abortion." In indicating that he did not want the same thing to happen again, the fact finder could infer that he thought his parents would not respect him for letting the situation reoccur.
 {¶ 44} In addition, Poloha's father testified that during one of appellant's telephone calls to their home, she stated she would "charge Robert with rape." Certainly, such a charge subjects a person to "hatred."
 {¶ 45} For the foregoing reasons, the trial court did not err in overruling appellant's motions for acquittal. Appellant's first, second, third and fourth assignments of error, accordingly, are overruled.
 {¶ 46} Appellant asserts in her fifth and sixth assignments of error that, with respect to her theft convictions, even if the state proved Poloha was a *Page 12 
"disabled adult," the trial court failed to make a finding concerning the amount of money she obtained. She argues that, pursuant to R.C. 2913.02(B)(3), her convictions on counts five and six were only fifth degree felonies, rather than fourth degree felonies. This court disagrees.
 {¶ 47} R.C. 2913.61(A) provides in pertinent part that in any case in which the "court determines that the value of the property***was five hundred dollars or more, it is unnecessary to find and return the exact value, and it is sufficient if the finding and return is to the effect that the value of the property** involved was five hundred dollars or more and less than five thousand dollars***."
 {¶ 48} In this case, the journal entry of conviction states that the trial court found appellant "guilty of theft; aggravated theft 2913.02-F4 as charged in Count(s) 5, 6 of the indictment." (Emphasis added.) Although it would have been "better practice" for the trial court "to determine the value of the property involved in the theft and to state that value" in rendering its finding of guilt, it was unnecessary under these circumstances. State v. Bohache, Montgomery App. No. 21308, 2006-Ohio-5560, ¶¶ 14-15.
 {¶ 49} Appellant's fifth and sixth assignments of error, consequently, also are overruled.
 {¶ 50} Appellant's convictions and sentences are affirmed.
 It is ordered that appellee recover from appellant costs herein taxed. *Page 13 
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 SEAN GALLAGHER, P.J., and ANTHONY O. CALABRESE, JR., J., CONCUR *Page 1